FILED
2022 Aug-25  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN  DISTRICT OF ALABAMA
## EASTERN DIVISION

**SHAUNTA WILLIAMS,**
**ELLA WYCKOFF, and**
**DAWN GRAY**

     **Plaintiffs,**

**v.**

**TALLADEGA COLLEGE,**

     **Defendant.**

**Civil Action No.:**

**<u>Jury Trial Demanded</u>**

## <u>COMPLAINT</u>

COME NOW Plaintiffs Shaunta Williams, Ella Wyckoff, and Dawn Gray, by and through their undersigned counsels, who file this lawsuit against Defendant Talladega College, pursuant to Title IX of the Education Amendment of 1972, 20 U.S.C.A. § 1681(a) ("Title IX)", and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., as amended, for overtime violations, as well as supplemental claims under the laws of the state of Alabama.

## I.  INTRODUCTION

1.     Plaintiffs Shaunta Williams, Ella Wyckoff, and Dawn Gray (collectively "Plaintiffs") bring these claims to hold Talladega College

1

("Talladega") accountable for violating their statutory rights under Title IX and the FLSA.

2.       Plaintiffs allege that Talladega failed to remedy a hostile work environment based on their gender and that, once they complained, they were subjected to retaliation.

3.       Plaintiffs further allege that as they endured sexual harassment, Talladega further exploited them by forcing them to work excessive hours while failing to pay them overtime rates, and when Plaintiffs subsequently complained about the violations of their rights to a lawful wage, they were subjected to retaliatory actions.

4.       Plaintiffs also bring claims under state law that Talladega breached the terms of their employment agreements, failed to compensate them for the value of their services, and unjustly enriched itself at Plaintiffs' expense.

## II. JURISDICTION AND VENUE

5.       This Court has subject-matter jurisdiction over the federal claims asserted in this action under 28 U.S.C. §§ 1331, 1343, and 1367.

6.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as Defendant conducts business in this district and division, and the events or omissions giving rise to the claims occurred in this district and division.

7.     Plaintiff asserts state-based claims under the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367.

### III. PARTIES

8.     Plaintiff Shaunta Williams (hereinafter "Ms. Williams") is a resident of Talladega County, Alabama, and at all times relevant to this complaint was employed by Talladega College.

9.     Plaintiff Ella Wyckoff (hereinafter "Ms. Wyckoff") is a resident of Talladega County, Alabama, and at all times relevant to this complaint was employed by Talladega College.

10.     Plaintiff Dawn Gray (hereinafter "Ms. Gray") is a resident of Talladega County, Alabama, and at all times relevant to this complaint was employed by Talladega College.

11.     Plaintiffs were eligible employees under §§ 203(e)(1) and 207 of the FLSA during the period in which they were employed by Defendant.

12.     Defendant is an employer as defined by § 203(d) of the FLSA and is therefore subject to the provisions of the FLSA, as amended.

13.     Talladega College is a private nonprofit higher educational institution subject to service at its principal place of business at 627 West Battle Street, Talladega, Alabama 35160.

14.     Talladega College receives various forms of federal funding for its academic programs and activities and is therefore subject to suit under Title IX.

## IV.  GENERAL ALLEGATIONS

### Systematic Wage-and-Hour Violations

15.     Plaintiffs have been employed by Talladega as "housekeepers" at hourly rates ranging from $12.00 to $12.36 on a monthly pay schedule.

16.     Plaintiffs' specific duties as outlined in their job description include cleaning and sanitizing assigned areas, such as residential and common spaces and bathrooms, and assisting laundry staff.

17.     Housekeepers at Talladega College are nonexempt employees who are eligible for overtime pay once they have worked a minimum of 40 hours for the week, at a rate of not less than time and one half their regular rate of pay.

18.     Despite their nonexempt status, Plaintiffs all consistently worked at least 46 hours each week at the direction of Talladega supervisory personnel.

19.     Talladega automatically deducted a one-hour lunch from Plaintiffs' workdays, even though Plaintiffs were rarely able to take an uninterrupted lunch break.

20.     Instead of permitting Plaintiffs a full lunch break, Plaintiffs' supervisors frequently interrupted Plaintiffs' lunch breaks by instructing them to

4

perform tasks, including tasks outside their job description such as preparing settings  for campus events and restocking  and delivering supplies.

21.    Plaintiffs' supervisors routinely required Plaintiffs to attend individual and group work meetings during their lunch breaks.

22.    In a typical five-day week, Plaintiffs' lunch breaks were interrupted with work-related duties approximately three or four days.

23.    Plaintiffs were also regularly required to perform work-related tasks after clocking out from their scheduled shifts, including but not limited to work outside the scope of their job description, such as setting up tables and chairs for COVID-19 testing stations, work that typically added at least another 30 uncompensated minutes to their workday.

24.    Plaintiffs' off-the-clock work organizing activities for  COVID-19 testing stations has amounted to approximately 50 additional hours of overtime for each Plaintiff.

25.    Talladega management-level personnel were well aware that housekeepers regularly worked during their lunch breaks and after clocking out and never acted to discipline supervisory employees who directed the workflow of housekeepers.

26.    Plaintiffs were also periodically required to perform what amounted to hostess and food service work at on-campus social events and concerts after they

had already clocked out, and were not paid for this extra work that also exceeded the scope of their job duties.

27. Defendant's supervisors manipulated time records to undercount Plaintiffs' hours and regularly failed to record all the hours Plaintiffs worked.

28. Since Plaintiffs' work hours exceeded 40 hours virtually every week of their employment, their additional off-the-clock and working lunch hours are compensable at 1.5 times their regular rates.

### Plaintiffs' Individual Wage-and-Hour Violations

29. Ms. Williams' employment commenced on or about November 21, 2020, and continued through July 27, 2022, when she was suspended without pay in temporal proximity to initiating complaints of unlawful workplace conduct, including unpaid wages and a hostile environment based on sex.

30. During the 87 weeks of her employment, Ms. Williams' working lunches and off-the-clock work amounted to approximately 522 hours of unpaid overtime. At her overtime rate of $18.54, Ms. Williams is owed at least $10,623.42, plus liquidated damages and attorneys' fees.

31. Additionally, Ms. Williams was not reimbursed for the frequent personal use of her vehicle for work she performed for the benefit of Talladega. Ms. Williams' requests for a gas card and reimbursement for fuel costs were ignored.

32.     Ms. Wyckoff's employment commenced on or about April 22, 2021, and ended on July 29, 2022, when she resigned her employment at Talladega.

33.     During the 66 weeks of Ms. Wyckoff's employment, her working lunches amounted to 396 hours of unpaid overtime. At her overtime rate of $18.54, Ms. Wyckoff is owed at least $8,268.84, plus liquidated damages and attorneys' fees.

34.     Ms. Gray's employment commenced on or about May 17, 2021, and she remains employed with Talladega.

35.     During the 62 weeks of Ms. Gray's  employment to date, her working lunches have amounted to 186 hours of unpaid overtime. At her overtime rate of $18.00, Ms. Gray is owed at least $4,266.00, plus liquidated damages and attorneys' fees.

### Sex-Based Hostile Environment Allegations

36.     Talladega has a work release program that employs persons incarcerated at the Alabama Department of Corrections' Childersburg Community Work Center. The program permits inmates to work manual labor jobs involving various janitorial, landscaping, and maintenance duties. While this practice was halted during the first years of the COVID-19 pandemic, Talladega resumed use of inmates around midsummer 2021.

37.     One of the inmates assigned to Talladega in June 2021, Maurice Sampleton, regularly harassed female housekeepers, engaging in behavior ranging from sexual propositioning to unwanted fondling and touching of their buttocks — which Alabama law defines as sexual assault — to striking and attempting to restrain women who rebuffed his advances. Talladega's own anti-harassment policy defines Sampleton's conduct as sexual harassment and admonishes all employees and managers to "refrain from any workplace behavior or conduct which could be viewed as sexual harassment."

38.     Ms. Wycoff, Ms. Williams, and Ms. Gray all directly experienced or observed harassing behavior by Sampleton, which occurred nearly every day since he returned to campus. For example, in about September 2021, he snuck up behind Ms. Gray and smacked her buttocks, which caused her to constantly remain in fear for her safety. She also observed him calling other women "stupid b****" and "ugly whore."

39.     Ms. Williams recalls multiple occasions when he snuck up behind her while she was bent over and told her that he intended to "train her."

40.     Sampleton attempted to sneak up on Ms. Wyckoff in an apparent attempt to forcibly touch her several times, and she recalls that he directed profane, threatening language at housekeepers.  He specifically yelled at Ms. Wyckoff, "You ain't s***, b****!"

41.     All three plaintiffs were traumatized by the continuing and blatant behavior by Sampleton and felt that their environment was unsafe.

42.     Female housekeepers, including Plaintiffs, were also regularly placed in social settings on campus that had an inappropriate atmosphere, blurring work and professional lines. For example, although it was completely outside their job description, it was commonplace for certain housekeepers to be assigned to act as hostesses at staff parties or after-event gatherings or to work weekend picnics organized for the staff where alcohol was being served.

43.     Talladega's employee handbook contains an alcohol and drug policy that "strictly prohibits an employee from having alcohol and controlled substances in his or her system without medical authorization during the employee's work hours or on College premises."

44.     Certain female housekeepers, including Plaintiffs, were instructed to wear "casual clothes" or non-work-appropriate outfits while working weekend events rather than uniforms, and were encouraged to drink alcohol and socialize with male guests. At least some of the women felt a level of pressure to dress revealingly.

45.     Ms. Williams was singled out for attention by several male administrative figures. The acting director of Physical Plant, Stanley Chatman ("Chatman"), who oversaw parts of the facilities maintenance operation, told her

on multiple occasions that he found her attractive. One fellow housekeeper told Ms. Williams that the then-President of Talladega College, Billy Hawkins, had a physical interest in Ms. Williams, and she had noticed that he sought out Ms. Williams at multiple social events.

46.    On one occasion, while "staffing" an event at the President's campus-provided home, Ms. Williams was told that she was free to leave her workstation to join a party in the basement, but that she needed to understand that "what happens in the basement stays in the basement."  She declined.

47.    On the evening of June 25, 2021, after being instructed to work a campus concert without overtime pay, Ms. Williams was told by her supervisor, the director of social services, Patricia Jones ("Jones"), that Hawkins wanted Ms. Williams to serve food and drinks at a private get-together he was hosting.

48.    When Ms. Williams arrived, she discovered that all the other guests were on the verge of departing. Soon after, Ms. Williams was instructed to go to a location off the kitchen area; within minutes, Hawkins entered and the two of them were alone.

49.    Ms. Williams, having observed Hawkins' attention to her in earlier settings, was immediately made uncomfortable and broke off the conversation. As she prepared to leave, she approached Jones to complain about the encounter. Jones appeared inebriated and uninterested.

50.     Plaintiffs did not receive any overtime or compensation for the social events they were required to attend, despite the fact that they were assigned tasks and serving duties.

### Complaints of Unlawful Conditions by Plaintiffs

51.     Ms. Williams, Ms. Wycoff, and Ms. Gray all made numerous complaints to their supervisor, Patricia Jones, and Jones' supervisor, Stanley Chatman ("Chatman"), about Sampleton's dangerous and demeaning conduct toward them and other female housekeepers, as well as the continual pattern of uncompensated extra work, but received no support or assistance.

52.     At least some of Sampleton's behavior was witnessed by supervisory personnel, including Chatman.

53.     There is no indication that Jones or Chatman took any steps to address Sampleton's harassment of housekeepers, nor did they stop the pattern of assigning housekeepers to work extra hours without pay. Jones on several occasions told Plaintiffs that if they were unhappy about their work environment, they should "take it up with HR."

54.     Although Plaintiffs reported to their supervisors and the human resources department that they were subjected to and had witnessed aggressive sexual behavior by an inmate working on campus, Talladega's Title IX coordinator

was never notified. Nor were Plaintiffs notified by their supervisors or managers of the option to file a complaint with the Title IX coordinator.

55.     As a result of Talladega's failure to follow its own Title IX protocols, none of the protections customarily afforded by the statute were afforded to Plaintiffs. No investigation was conducted. No hearing was held, and none of the complaints were recorded. None of the supervisors who were apprised of the harassment were disciplined for failing to report or address the harassment endured by the housekeepers.

56.     During the late spring of 2022, Ms. Williams sought to elevate the concerns of the female housekeepers to higher-level management. First, she sent a series of emails to Human Resources Manager Brenda Rhoden ("Rhoden") to complain about both Sampleton's ongoing harassment of housekeepers and the uncompensated extra work hours. Rhoden told her that she needed to stop griping about her job and to stop sending her email complaints.

57.     Soon after Rhoden warned her about her complaints, Ms. Williams began noticing discrepancies on her paychecks, specifically that she was paid less than she previously had been for the same amount of hours.

58.     In mid-May 2022, Ms. Williams also escalated her complaints to Talladega's Vice President of Administration and Finance, Alfred Norris, by

emailing him about the harassment and the college's failure to pay the housekeepers for their hours worked.

59.   On May 18, 2022, Ms. Williams and Ms. Gray were both summoned to the HR office after they had already clocked out.

60.   Ms. Williams and Ms. Gray were both made to wait outside the Human Resources office for about 20 minutes.

61.   Once they were brought into the Human Resources office, Ms. Williams and Ms. Gray were questioned by Rhoden and Jones about their previous complaints. But instead of taking steps to correct the situation, Rhoden and Jones became defensive and accused both Ms. Gray and Ms. Williams of failing to follow the proper protocol for reporting wrongdoing, which frustrated Ms. Williams to the point of tears. At no point was the "proper protocol" described, and no steps were taken to address their concerns.

62.   Neither Ms. Williams nor Ms. Gray were paid for the hour they spent attending the work-related HR meeting outside their normal schedule.

63.   Within days of the May 18 meeting, Ms. Williams was written up for allegedly missing days of work without providing a medical excuse, a claim that is blatantly pretextual given that she did in fact provide medical documentation in advance of her time off.

64.    Ms. Williams' write-up within days of meeting with a senior human resources official and within weeks of reaching out to the vice president of administration and finance was part of a recurring pattern at Talladega. All three Plaintiffs faced unjustified discipline or written correction during the 2021-2022 time frame — sometimes for attendance issues like being late by a few minutes or leaving work for family illnesses. All three Plaintiffs found their jobs were regularly threatened. In this exact period, all three Plaintiffs observed that discipline would frequently happen right after they initiated complaints.

65.    Frustrated by the lack of response from management at Talladega, in July 2022 Ms. Williams made what she believed was an anonymous complaint about Sampleton's harassment of female housekeepers to the Alabama Department of Corrections and the Attorney General's Office.

66.    Weeks later, on July 27, 2022, a corrections officer from the inmate work center at Childersburg came to Talladega's campus to speak to Ms. Williams about whether she had witnessed violent or harassing behavior by Sampleton. After Ms. Williams described Sampleton's behavior, the officer immediately took Sampleton back into custody.

67.    Hours after she met with the corrections officer, Ms. Williams was abruptly informed that she was being placed on administrative leave for going to

14

outside state agencies to raise complaints, banned from being on campus, and told that she was now the subject of a disciplinary investigation.

68.     The very same week, Chatman approached Ms. Wycoff, ostensibly to warn her that if she and others antagonized the inmates, they would be putting themselves in danger.

69.     Ms. Wycoff left work the same day of Chatman's warning and has not returned because she fears for her safety.

## V.  CAUSES OF ACTION

### COUNT ONE
### (FLSA: FAILURE TO PAY OVERTIME)

70.     Plaintiffs reallege  the foregoing allegations as if set forth herein.

71.     Defendant willfully, knowingly, and recklessly violated Plaintiffs' rights under §§ 203 and 207 of the FLSA by taking unlawful deductions from Plaintiffs' wages and failing to properly pay overtime wage compensation to Plaintiffs, who were nonexempt employees.

72.     Defendant deliberately and routinely avoided paying Plaintiffs' full compensation earned by refusing to pay them for work performed during their lunch hour and off the clock.

73.     Defendant knew or reasonably should have known that Plaintiffs were working during their lunch breaks and after they clocked out, and that as a result their rights under the FLSA were violated.

74.    Defendant has not made a good faith effort to comply with the FLSA with respect to Plaintiffs' overtime compensation.

75.    As a proximate result of Defendant's violations of the FLSA, Plaintiffs suffered damages by failing to receive overtime compensation in accordance with §§ 203 and 207 of the FLSA.

## COUNT TWO
## (FLSA: RETALIATION)

76.    Plaintiffs reallege the foregoing allegations as if set forth herein.

77.    Plaintiffs repeatedly complained to their supervisors about not being paid in accordance with their statutory rights under the FLSA, insofar as they were not compensated for working in excess of 40 hours a week. Defendant responded by subjecting Plaintiffs to materially adverse actions, including unwarranted discipline and intimidation, and by suspending Ms. Williams' employment, in violation of 29 U.S.C.A. § 215(a).

## COUNT THREE
## (TITLE IX VIOLATION: SEXUAL HARASSMENT)

78.    Plaintiffs reallege the foregoing allegations as if set forth herein.

79.    Title IX of the 1972 Education Amendments to the Civil Rights Act of 1964 provides in relevant part that no person in the United States shall, on the basis of sex, be subjected to discrimination under any education program or activity receiving federal financial assistance. 20 U.S.C.A. § 1681(a). Title IX applies to all

operations of an educational institution, including those that take place in its facilities, and protects everyone who interacts with a school from sex-based discrimination, including employees.

80.     Defendant Talladega College is an educational institution receiving federal financial assistance.

81.     Plaintiffs Williams, Wycoff, and Gray are employees of Talladega College who reported that they were subjected to ongoing sexually harassing behavior by an inmate under Talladega College's direction and supervision, putting Defendant on notice of a discriminatorily abusive working environment based on sex.

82.     Despite having actual knowledge of ongoing sexual harassment of Plaintiffs by an inmate working under its direction and control, Talladega took no effective steps to correct the complained-about behavior and was thus deliberately indifferent to reports of a hostile work environment based on sex. Talladega's response was unreasonable in light of the circumstances.

83.     Talladega also failed to adopt and publish grievance procedures that provide for the prompt and equitable resolution of Title IX complaints. 34 C.F.R. § 106.8(c).

**COUNT FOUR**
**(TITLE IX VIOLATION: RETALIATION)**

84.     Plaintiffs reallege the foregoing allegations as if set forth herein.

85.    Plaintiffs Williams, Wycoff, and Gray engaged in protected activity under Title IX by reporting that they were subjected to a hostile work environment based on sex.

86.    As a proximate result of their protected activity, Plaintiffs were subjected to mistreatment that well might have dissuaded a reasonable person from engaging in protected activity, including but not limited to the following: (1) threatening Plaintiffs with reprisals if they persisted in reporting unlawful harassment; (2) suspending Plaintiff Williams and placing her on administrative leave; (3) intimidating Plaintiff Wycoff with threats that she might be a target for violence by inmates, which led to her resignation from her position.

## COUNT FIVE
## (BREACH OF CONTRACT)

87.    Plaintiffs reallege the foregoing allegations as if set forth herein.

88.    Plaintiffs Williams, Wycoff, and Gray entered into a valid contract to provide services in the form of employment, and Defendant Talladega subsequently assented to compensate them for the delivery of the services they provided.

89.    Defendant Talladega breached the contract it entered with Plaintiffs when it failed to pay Plaintiffs for the full value of hours worked by requiring them to work during their lunch breaks and after clocking out, and to engage in services outside the scope of their employment description.

18

90.     Based on Talladega's breach of their contracts, Plaintiffs were each deprived of wages they lawfully earned.

## COUNT SIX
## (QUANTUM MERUIT)

91.     Plaintiffs  reallege the foregoing allegations as if set forth herein.

92.     Valuable services were rendered to Defendant by Plaintiffs Williams, Wycoff, and Gray, and the respective services were accepted, used, and enjoyed by Defendant.

93.     Despite Plaintiffs' having a reasonable expectation of receiving compensation for the services rendered, Defendant Talladega College failed to provide adequate compensation, entitling Plaintiffs to recover the value of their services.

## COUNT SEVEN
## (UNJUST ENRICHMENT)

94.     Plaintiffs reallege the foregoing allegations as if set forth herein.

95.     Defendant has been unjustly enriched at the expense of Plaintiffs, in that Defendant knowingly and/or intentionally accepted the benefit of the labor and services performed by Plaintiffs, despite failing to pay Plaintiffs for such work.

96.     Plaintiffs are entitled to relief in the form of an award of damages reflecting the value of their uncompensated labor and services, in order that

Defendant be prevented from receiving an unjust benefit for services for which it has not fully paid.

## VI.   PRAYER FOR RELIEF

1. Wherefore, Plaintiffs pray that process is issued according to law and demand judgment against Defendant as follows:

   a. All damages that may be awarded under the FLSA, including lost wages and back pay; general compensatory damages for retaliation, including but not limited to damages for mental anguish and emotional distress; and liquidated damages;

   b. All damages for breach of contract or, alternatively, for uncompensated labor and services provided under Alabama law;

   c. Special damages to the extent allowed by law;

   d. Injunctive relief under Title IX preventing and prohibiting Defendant from engaging in its present practices in violation of the laws cited herein, as well as damages under Title IX for lost wages based on retaliatory conduct;

   e. Reasonable attorneys' fees and expenses and costs pursuant to 42 U.S.C. § 1988;

   f. Unpaid overtime compensation for work performed and an equal amount of liquidated damages including reasonable attorneys' fees,

litigation costs, and other appropriate relief pursuant to 29 U.S.C. § 216(b); and

g.  Such other and further and different relief as this Court deems just and appropriate.

Respectfully submitted, this 25th day of August, 2022.

/S/ Artur G. Davis
HKM Employment Attorneys LLP
ASB-3672-D56A
2024 3rd Ave. N Suite 307
Birmingham, AL 35203
T: (205) 881-0935
adavis@hkm.com

/S/ Arnold J. Lizana
Law Offices of Arnold J. Lizana III
GA Bar No.: 698758
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
T: (404) 207-1559
F: (470) 231-0672
alizana@attorneylizana.com
(applying for admission *pro hac vice*)

**ATTORNEYS FOR PLAINTIFFS**